<u>FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTHONY KIRKSEY, | : | **HON. ROBERT B. KUGLER** |
| Petitioner, | : | Civil Action No. 09-6422 (RBK) |
| v. | : |  |
| DONNA ZICKEFOOSE, | : | <u>OPINION</u> |
| Respondent. | : |  |

**APPEARANCES:**

    ANTHONY KIRKSEY, #13226-039
    FCI Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey  08640
    Petitioner <u>Pro</u> <u>Se</u>

    MARK CHRISTOPHER ORLOWSKI, Assistant United States Attorney
    PAUL J. FISHMAN, UNITED STATES ATTORNEY FOR NEW JERSEY
    402 East State Street, Room 430
    Trenton, New Jersey  08608
    Attorneys for Respondents

**KUGLER**, District Judge

    Petitioner Anthony Kirksey filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, and supporting memorandum, challenging the date set by the Bureau of Prisons ("BOP") for his pre-release custody placement in a residential re-entry center ("RRC"), also known as a community corrections center (hereinafter referred to as "CCC").  The BOP filed an Answer, accompanied by the declarations of Karlton Byrd and Tara Moran, together with several exhibits.  Petitioner filed a <u>pro</u> <u>se</u> Traverse.  For the reasons explained in this Opinion, the Court will dismiss the Petition.

## I.  BACKGROUND

Petitioner is incarcerated at FCI Fort Dix in New Jersey, serving a 137-month term of imprisonment imposed on December 6, 2002, by the United States District Court for the Eastern District of Michigan, based on his conviction after trial by jury of possession with intent to distribute cocaine.  See United States v. Kirksey, Crim. No. 00-80654 (GER) judgment (E.D. Mich. Dec. 6, 2002).  The Petition challenges the BOP's determination to place Petitioner in a CCC for the final six months of his term of incarceration pursuant to the Second Chance Act.

The facts are not in dispute.  Petitioner's Case Manager, Karlton Byrd, filed a declaration. (Docket Entry #6-1, pp. 1-5.)  Mr. Byrd avers:

> In conjunction with making a RRC placement recommendation, I reviewed Petitioner's Central File, including such things as his Presentence Investigation Report, and prior Program Review reports.  The above sources indicated that Petitioner had an established residence upon his release.  Although he does not have secured employment, he has prior work experience as a financial consultant.  Moreover, we took into consideration Petitioner's lengthy criminal history and his institutional adjustment. Specifically, while serving his present sentence, Petitioner has been found to have committed three prohibited acts including, possession of intoxicants, possession of anything authorized (Hydroxycut), and failure to stand count.  Lastly, Petitioner previously served a federal sentence for Possession with Intent to Distribute Cocaine and Felon in Possession of a Weapon. Additionally, he violated the terms of his supervised release, and he was returned to federal custody.  Petitioner also has past state convictions for Possession of Cocaine and Possession of a Concealed Weapon.  Weighing Petitioner's needs and his history and characteristics, as well as public safety, Unit Team determined a RRC placement of 150-180 days would provide Petitioner with the greatest opportunity to successfully reintegrate into society.
>
> Following the meeting with the Petitioner, I completed the Residential Re-Entry Center Consideration form, attached as Exhibit 2 . . . .

> I am aware that the April 14, 2008 memorandum required Regional Director approval for any RC recommendation beyond six months. That directive, in no way, affected my RRC placement decisions. The Second Chance Act of 2007 made inmates eligible for up to twelve months of RRC time, and my recommendations for RRC placement were made with this time-frame in mind. I understand that the Second Chance Act of 2007 also required that the Bureau create regulations which ensured that placement of an inmate in a community correctional facility would be of sufficient duration to provide the greatest likelihood of successful reintegration into the community. See 18 U.S.C. § 3624(c)(6); 28 C.F.R. 570.22. This is the standard I utilized when determining Petitioner's RRC placement recommendation.

(Docket Entry #6-1, pp. 2-4.)

The Residential Re-Entry Center Consideration form, dated June 25, 2009, is attached to the Byrd declaration. (Docket Entry #6-1, p. 21.)  The printed form indicates that the Unit team reviewed Petitioner on an individual basis for Residential Re-Entry Center placement and, after considering the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, statement of the sentencing court, pertinent policy statement issued by the U.S. Sentencing Commission, the inmate's need for services, public safety, and the necessity of the BOP to manage its inmate population, as outlined in Program Statement 7310.04, the Unit Team recommends a placement of 150-180 days.[1] The printed form states: "This placement recommendation is of sufficient duration to provide the greatest likelihood of successful reintegration into the community." At the bottom of the form, in the space provided for comments, the following handwritten statement appears:

---

[1] Everything is part of the printed form, except the 150-180 day period and the comments, which are handwritten on the form.

> I/M has a stable residence, no employment, prior work history as a financial consultant; skills in Landscaping, sanitation and library work; 150-180 days is appropriate to meet prerelease needs.

(Docket Entry #6-1, p. 21.)

Petitioner subsequently submitted a Request for Administrative Remedy to the Warden, in which Petitioner asks to be reconsidered for a 12-month period in a CCC. (Docket Entry #6-2, pp. 28-29.) On August 10, 2009, the Warden denied Petitioner's request and advised him that he had the right to appeal to the Regional Director within 20 calendar days. (Docket Entry #6-2, pp. 30-31.) Petitioner appealed to the Regional Director. (Docket Entry #6-2, pp. 32-33.) On September 29, 2009, J. L. Norwood, Regional Director, denied the appeal and notified Petitioner of his right to appeal within 20 calendar days to the Central Office. (Docket Entry #6-2, p. 34.)

Petitioner asserts in his Reply that, although the above decision is dated September 29, 2009, he did not receive it until October 29, 2009. (Docket Entry #7, p. 12) (On September 29, 2009, the Regional Director dated his response . . . . [H]owever, for some reason, the institutional at FCI Fort Dix Camp did not put it in the mail at the institution to be mailed to the Petitioner until October 29, 2009, see cover receipt dated mailed on 10/29/09"). Attached to the Reply is a one page document containing Petitioner's typed mailing address and the handwritten notation, "mailed @FtD 10/29/09." (Docket Entry 7 at p. 22.) Petitioner asserts that on November 3, 2009, he submitted his Central Office appeal for mailing. (Docket Entry #1-1, pp. 13-14.) Petitioner asserts that on January 12, 2010, he received a Rejection Notice dated December 29, 2009. (Docket Entry #7 at p. 14.) The Rejection Notice, from the Central Office Administrative Remedy Coordinator, states that the appeal was rejected as follows:

> Your appeal is untimely. Central Office appeals must be received within 30 days of the Regional Director's response. This time limit includes mail time. Your may resubmit your appeal in proper form within 15 days of the date of this rejection notice. Provide staff verification on BOP letterhead documenting that the untimely filing of this appeal was not your fault.

(Docket Entry #7, p. 24.)

Petitioner asserts that "when he took his Rejection Notice to his Unit Team for verification, they had already received the Court's Order to Show Cause and refused to verify the Petitioner Appeal purporting that it was not necessary since the Petitioner had already entered his petition in Court, and that the Court had already issued a Show Cause Order." (Docket Entry #7 at p. 14.)

Petitioner executed the Petition which is before this Court on December 17, 2009. The Clerk received it on December 22, 2009. Petitioner challenges the six-month CCC placement on the following grounds:

> Ground One: THE BOP ABUSED IT'S DISCRETION IN DETERMINING THAT THE PETITIONER'S (RRC) PLACEMENT WOULD BE FOR A MAXIMUM OF SIX MONTHS RELYING ON AN INTERNAL BOP MEMORANDUM THAT IS CONTRARY TO THE MANDATE SET FORTH IN THE SECOND CHANCE ACT OF 2007.
>
> The Petitioner . . . is serving a (137) month sentence . . . for Possession W/Intent to Distribute Cocaine. His projected release date via receiving Good Time Conduct Time is March 4, 2011, Relying [principally] on the mandate set forth in the Second Chance Act of 2007, the Petitioner requested of his Unit Team, (e.g. his Case Manager Mr. Karlton Byrd) to consider him for a (12) month placement in (RRC). However, based upon a[n] "internal memorandum" sent down by Assistant Director of Correctional programs Division Joyce K. Conley, and Assistant Director/General Counsel Kathleen M. Keeney, (which in pertinent part, instructs prison officials not to comply with the mandate set

5

forth in the Second Chance Act), the Unit Team arbitrarily and capriciously refused to consider the Petitioner's request to be considered for (12) months in a (RRC). The Unit Team's refusal to consider the Petitioner's request for any amount of time over and above six months in a (RRC) amounted to a[n] abuse of their official discretion.

Ground Two: THE BOP NEGLECTED TO MAKE AN INDIVIDUAL DETERMINATION IN THIS CASE THAT WOULD ENSURE THAT THE PETITIONER'S PLACEMENT WOULD BE "OF SUFFICIENT DURATION TO PROVIDE THE GREATEST LIKELIHOOD OF SUCCESSFUL REINTEGRATION BACK INTO SOCIETY," THEREFORE, THE BOP VIOLATED THE PETITIONER'S [PROCEDURAL] DUE PROCESS.

The Second Chance Act increased the duration of prerelease placement in a Community Custody Center (CCC) from six months to (12) months and [now] requires the BOP to make an individual determination that ensures that the placement be "of sufficient duration to provide the greatest likelihood of a successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(c) (April 9, 2008). The Petitioner asserts that that did not take place in this case. In the instant case, the Petitioner showed up at his semi-annual Team review. Not a word was either mentioned or discussed in regards to him being placed in an (RRC). The meeting merely consisted of the recitation of the normal "ritual incantations" Team members generally ask, i.e. Have you paid your fine, are you enrolled in any programs, do you have any questions, O.K. sign here. Subsequent to the Petitioner having [formal] Team meeting, It must of occurred to the Petitioner's Case Manager (Mr. Byrd) that he Petitioner was within the time frame in which a discussion on preparation for release should have taken place. That night, (which by the way was Mr. Byrd's late night) he called the Petitioner over the loud speaker to report to his office where he proceeded to question him in regards to the address that he would be residing at upon being released. After that he informed the Petitioner that he would be recommending (6) months of halfway house. The Petitioner thereafter requested that he be considered to (12) months in light of the Second Chance Act, and the length of time that he had been incarcerated. Mr. Byrd then informed the Petitioner that he felt (6) months would be sufficient and that was what the Team was going to recommend. It must be

>noted that the Second Chance Act limits the BOP's discretion in determining the placement duration [not to exceed 12 months] to provide the greatest likelihood of a successful reintegration back into the community. 18 U.S.C. § 3624(c)(6). No individual determination was made in this case in violation of the Petitioner's [procedural] Due Process.

(Docket Entry #1-3, Petitioner's Claims at pp. 1-3.)

By Order entered January 12, 2010, this Court ordered Respondents to file and serve an answer and documents related to Petitioner's claims. On February 23, 2010, Respondents filed an Answer, together with declarations of Karlton Byrd and Tara Moran, and attached documents. Respondents argue:

>(A) PETITIONER HAS NO CONSTITUTIONAL OR STATUTORY RIGHT TO PRE-RELEASE PLACEMENT IN A RRC OR IN HOME CONFINEMENT;
>
>(B) THE PETITION MUST BE DISMISSED BECAUSE PETITIONER HAS FAILED TO PROPERLY EXHAUST HIS ADMINISTRATIVE REMEDIES;
>
>(C) THE BOP PROPERLY EXERCISED ITS DISCRETION IN DETERMINING PETITIONER'S PRE-RELEASE RRC PLACEMENT UNDER THE SECOND CHANCE ACT;
>
>(D) PETITIONER'S ALLEGATION THAT THE BOP IMPERMISSIBLY RELIED ON THE APRIL 14 MEMORANDUM IS MISGUIDED BECAUSE THE APRIL 14 MEMORANDUM PROPERLY GUIDES STAFF ON HOW TO APPLY THE REQUIREMENTS OF THE SECOND CHANCE ACT.

(Docket Entry #6, pp. 13, 15, 20, 23.)

Petitioner filed a Reply on March 22, 2010, in which he argues, in part, that the Petition should not be dismissed for failure to exhaust administrative remedies because the BOP prevented him from filing a timely appeal to the Central Office by failing to deliver the Regional

Director's decision to him until after the time to appeal had expired.  (Docket Entry #7.)  He also argues that BOP officials refused to provide documentation in response to the Central Office's Rejection notice.  Id.

### III.  DISCUSSION

A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed."  Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).  This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the legality of his CCC placement by the BOP under federal law, and he was incarcerated in New Jersey at the time he filed the Petition.  See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005); see also Spencer v. Kemna, 523 U.S. 1 (1998).

B.  Exhaustion

Respondents argue that the Petition should be dismissed for failure to exhaust administrative remedies because "Petitioner did not fully exhaust his administrative remedies and has not provided an appropriate reason for excusing his failure to do so."  (Docket Entry #6, p. 20.)  Respondents further argue:

> Petitioner's appeal to the Regional Office was denied on September 29, 2009, but his appeal to the Central Office was not filed until November 9, 2009, more than 30 days after the denial of his appeal to the Regional Office. Prior to receiving a response from the Central Office, Petitioner filed the instant Petition, on or about December 22, 2009. Thereafter, on or about December 29, 2009, the Central Office rejected Petitioner's appeal on the grounds that it was untimely, and directed Petitioner to submit verification that the failure to timely file his appeal was not his fault. As of February 12, 2010, BOP has not record of Petitioner re-filing his Central Office appeal. Accordingly, Petitioner has not fully exhausted his administrative remedies with respect to the issue raised in the instant Petition. Moreover, in his Petition, Petitioner does not allege futility in completing the administrative process and does not provide any explanation why his Central Office appeal was not filed in a timely fashion.

(Docket Entry #6, pp. 18-19.)

As explained supra, Petitioner responds to the exhaustion argument in his Reply as follows: (1) he could not file a timely appeal to the Central Office because he did not receive the Regional Director's decision (dated September 29, 2009) until October 29, 2009; (2) he mailed a BP-11 (Central Office Appeal) on November 3, 2009, the date he received the form from Mr. Tolbert, a Unit Counselor; (3) when he did not receive a decision from the Central Office within the 40-day response time allotted in the regulations, he considered that to be a denial, in accordance with 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level"); (4) Petitioner could not submit a timely response to the Rejection Notice (dated December 29, 2009) because he did not receive it in the institutional mail until January 12, 2010, and the Unit Team refused to verify the dates he received the Regional Director's decision because this Court had already ordered an answer. (Docket Entry #7, pp. 12-14.)

This Court notes that the declaration of Tara Moran, which avers that Petitioner's appeal to the Central Office was not received until November 9, 2009, does not indicate the date on which prison officials delivered the Regional Director's decision (dated September 29, 2009) to Petitioner by way of the institutional mail. (Docket Entry #6-2.) Ms. Moran merely avers that the computerized indexes of administrative appeals by inmates show that the Regional Director denied Petitioner's appeal on September 29, 2009. (Id. at p. 3.) Furthermore, Ms. Moran does not indicate when officials delivered the December 29, 2009, Rejection Notice through the institutional mail to Petitioner. Finally, Respondents did not submit any declaration or other response contesting the factual allegations made by Petitioner in his Reply filed March 22, 2010.

Based on the foregoing, there is no dispute that: (1) Petitioner was prevented from filing a timely appeal in the Central Office (within 20 days) because he did not receive the September 29, 2009, Regional Director's decision in the institutional mail until October 29, 2009; (2) Petitioner mailed his appeal to the Central Office on November 3, 2009, within 20 days of his October 29. 2009, receipt of the September 29, 2009, Regional Director's denial notice; (3) the Central Office did not issue a decision regarding Petitioner's appeal, which it received on November 9, 2009, until December 29, 2009, which is beyond the 40-day time limit allotted in the regulation for a response on the appeal. This Court finds that, because BOP officials did not deliver the Regional Director's decision to Petitioner through the prison mail system until October 29, 2009, through no fault of his own Petitioner was not able to file a timely appeal. Under these circumstances, Petitioner has shown good cause for failing to file a timely appeal to the Central Office, and prejudice attributable thereto. See Moscato v. Fed. Bureau of Prisons, 98 F. 3d 757 (3d Cir. 1996) ("We hold that a prisoner's procedural default of his administrative

10

remedies bars judicial review of his habeas petition unless he can show cause for the default and prejudice attributable thereto").

C. The Merits

Petitioner complains that, by determining his CCC placement period pursuant to the April 14, 2008, and November 14, 2008, Memoranda issued by the BOP, Respondents acted contrary to 18 U.S.C. § 3624(c), i.e., Respondents failed to consider him for a 12-month placement period that would give him the greatest likelihood of successful reintegration. (Docket Entry #7, pp. 4-8.) However, because the six-month placement decision was made without reference to the limitations set forth in the April 14, 2008, and November 14, 2008, Memoranda, and Petitioner was considered for a 12-month placement in accordance with the standard and factors set forth in the applicable statute, as amended by Second Chance Act, this Court will dismiss the Petition.

This Court will first examine the relevant statutory regime, as amended by the Second Chance Act on April 9, 2008. Prior to the Second Chance Act, Section 3624(c) provided:

> (c) **Pre-release custody**.-- The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extend practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. § 3624(c)(2007), amended by 18 U.S.C. § 3624(c) (Apr. 9, 2008).

As amended by the Second Chance Act, Section 3624(c) now provides, in relevant part:

11

>(c) **Prerelease Custody**
>
>(1) **In General**.  The Director of the BOP shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community . . . .
>
>   *      *      *
>
>(6) **Issuance of Regulations**.  The Director of the BOP shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the BOP is
>
>>(A) conducted in a manner consistent with section 3621(b) of this title;
>>
>>(B) determined on an individual basis; and
>>
>>(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c)(1) and (c)(6) (Apr. 9, 2008).[2]

---

>[2] Section 3621(b) of Title 18 provides, in relevant part:

(b) Place of imprisonment.-- The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability. . . ., that the Bureau determines to be appropriate and suitable, considering--

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence [that articulated the purpose behind the sentence or offered a recommendation for placement]

(continued...)

The Second Chance Act modified Section 3624(c) by (1) doubling the pre-release placement period, (2) requiring the BOP to make CCC placement decisions on an individual basis, and (3) requiring the BOP to ensure that, consistent with the factors in Section 3621(b), the duration of the placement period gives the inmate the greatest likelihood of successful community reintegration.  See 18 U.S.C. § 3624(c).

On April 14, 2008, the BOP issued a Memorandum which provides, in relevant part:

> **Regional Director Approval Required for Pre-Release RRC Placement Beyond Six Months**.  While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less.  Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

(Memorandum dated April 14, 2008, p. 4) (Docket Entry #6-1, p. 26).

On November 14, 2008, the BOP issued a second memorandum, which provides:  "An RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."  (Docket Entry #6-1 at p. 35.)

On October 21, 2008, the BOP adopted regulations which do not contain the limiting criteria of the Memoranda.  See 73 Fed. Reg. 62440-01 (Oct. 21, 2008).  The regulation, entitled

---

[2](...continued)

. . .

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28 . . . .

18 U.S.C. § 3621(b) (April 9, 2009).

"Time-frames," authorizes BOP staff to designate inmates to a CCC for the final 12 months of the sentence. See 28 C.F.R. § 570.21(a) (Oct. 21, 2008) ("Inmates may be designated to community confinement as a condition of prerelease custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months"). Unlike the Memoranda, the regulation entitled "Designation" does not limit the discretion of staff to designate inmates to a CCC for more than six months:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

28 C.F.R. § 570.22 (Oct. 21, 2008).

Petitioner maintains that, by determining his CCC placement period pursuant to the April 14, 2008, and November 14, 2008, Memoranda issued by the BOP, Respondents acted contrary to 18 U.S.C. § 3624(c), i.e., Respondents failed to consider him for a 12-month placement period that would give him the greatest likelihood of successful reintegration. Specifically, Petitioner summarizes his argument in his Reply:

> Specifically, the Petitioner contends that the BOP official in this case, have relied upon both the April 14, 2008; and "a fortiori," the November 14, 2008 memorandums as an excuse not to comply with what they are required by statute to do, and that is to "consider him" for the maximumly allowed (12) month duration in a (RRC), e.g. an amount of time that he asserts would provide him with the "greatest likelihood" of successful reintegration back into the community as opposed to the BOP's generally recommended maximum duration of a mere (6) months. Due to the impermissible and arbitrary limitations set forth in the above stated memorandums, the Petitioner contends that the BOP abused its discretion when they decided that contrary to their authority

14

> provided with the (SCA), that the Petitioner's (RRC) placement would not exceed (6) months.
>
> \*   \*   \*
>
> [I]nstead of applying the plain and specific language set forth within the (SCA), the Respondent relied upon the "policy guidance" contained in the above stated memorandum(s) in reaching its decision on the length of his (RRC) placement. Specifically, the Petitioner contends that these memorandums effectively imposed a (6) month upper limit on the duration of (RRC) placement . . . . [B]y instructing the Respondent that pre-release placement needs can usually be accommodated by a placement of six (6) months (without advance written approval from the Regional Director), the April 14, and the November 14, 2008 memorandums, respectively, deny the Petitioner an individualized determination of his (RRC) placement contrary to the Second Chance Act's Amendments to Section 3624(c) . . . . Congress specifically intended that each inmate "be considered" at least, for the full (12) month period of (RRC) placement with the only limitation being application of the § 3621(b) factors.

(Docket Entry #7, pp. 4-8.)

The problem with Petitioner's argument is that the record expressly shows that (1) the BOP did not decide Petitioner's placement on the basis of the impermissible limiting criteria contained in the BOP memoranda, and (2) the BOP determined that a placement of six months would provide the greatest likelihood of successful reintegration. Here, Karlton Byrd submitted a declaration in which he avers that he was personally involved in Petitioner's placement decision, the recommendation of six months was made without regard to the Memoranda, and a placement of six months will provide the greatest likelihood of successful reintegration:

> In conjunction with making a RRC placement recommendation, I reviewed Petitioner's Central File, including such things as his Presentence Investigation Report, and prior Program Review reports. The above sources indicated that Petitioner had an established residence upon his release. Although he does not have

15

> secured employment, he has prior work experience as a financial consultant.  Moreover, we took into consideration Petitioner's lengthy criminal history and his institutional adjustment.  Specifically, while serving his present sentence, Petitioner has been found to have committed three prohibited acts including, possession of intoxicants, possession of anything authorized (Hydroxycut), and failure to stand count.  Lastly, Petitioner previously served a federal sentence for Possession with Intent to Distribute Cocaine and Felon in Possession of a Weapon.  Additionally, he violated the terms of his supervised release, and he was returned to federal custody.  Petitioner also has past state convictions for Possession of Cocaine and Possession of a Concealed Weapon.  Weighing Petitioner's needs and his history and characteristics, as well as public safety, Unit Team determined a RRC placement of 150-180 days would provide Petitioner with the greatest opportunity to successfully reintegrate into society.
>
> Following the meeting with the Petitioner, I completed the Residential Re-Entry Center Consideration form, attached as Exhibit 2 . . . .
>
> I am aware that the April 14, 2008 memorandum required Regional Director approval for any RC recommendation beyond six months.  That directive, in no way, affected my RRC placement decisions.  The Second Chance Act of 2007 made inmates eligible for up to twelve months of RRC time, and my recommendations for RRC placement were made with this time-frame in mind.  I understand that the Second Chance Act of 2007 also required that the Bureau create regulations which ensured that placement of an inmate in a community correctional facility would be of sufficient duration to provide the greatest likelihood of successful reintegration into the community.  See 18 U.S.C. § 3624(c)(6); 28 C.F.R. 570.22.  This is the standard I utilized when determining Petitioner's RRC placement recommendation.

(Docket Entry #6-1, pp. 2-4.)

  Moreover, the record unambiguously shows that neither the Warden nor the Regional Director relied on the limiting criteria set forth in the BOP Memoranda, in denying Petitioner's administrative remedy request for a 12-month placement.  Specifically, after stating that

16

Petitioner's placement was based on the criteria set forth in 18 U.S.C. § 3621(b), the Warden stated:

> In your particular case, the Unit Team considered you for halfway house placement according to the Second Chance Act of 2007, on June 25, 2009. It was determined that 150-180 days in (RRC) placement would be sufficient to meet your pre-release needs. This recommendation was based on you having an established release residence, no potential employment, and prior work history as a financial consultant. In regards to your marketable skills, you have gained skills while incarcerated in landscaping, sanitation, and library work. In light of the tough economic times, you anticipate having a difficult time securing employment. The Unit Team strongly encourages utilization of the Employment Resource Center during your incarceration period to assist in seeking a potential career path and/or employment prospects . . . .
>
> Your case was appropriately reviewed for consideration in compliance with the Second Chance Act. The Unit Team's recommendation of 150 to 180 days is appropriate. This recommendation will provide sufficient time for you to secure employment and accrue funds to facilitate a successful transition back into the community. Accordingly, your request is denied.

(Docket Entry #6-2, pp. 30-31.)

Analogously, the Regional Director's decision did not rely on the limiting criteria set forth in the Memoranda. The Regional Director stated in his decision:

> [W]hen evaluating an inmate for RRC placement, a number of factors are weighed in determining a recommendation for placement. Determinations are based on the individual's needs, existing community resources, institutional adjustment, length of sentence, and the need to provide for the safety and security of the general public. Inmates are also considered under the SCA, which looks at the resources of the facility, nature and circumstances of the offense, history and characteristics of the inmate, statement of the court imposing the sentence and any pertinent policy statement by the U.S. Sentencing Commission.

> A review of your appeal reveals you are serving a 137-month sentence with a March 4, 2011, projected release date. As indicated by the Warden, your Unit Team considered your individual situation and transitional needs pursuant to the above criteria. Based on this review, you were recommended for a 180-day RRC placement. This period was determined to be sufficient to provide you the greatest likelihood of successful reintegration into the community. Staff are afforded broad discretion in reaching this decision and you present no evidence this discretion was abused. Accordingly, your appeal is denied.
>
> If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received . . . within 30 calendar days of the date of this response.

(Docket Entry #6-2, p. 34.)

"By increasing the placement period to 12 months and requiring the BOP to ensure that placements are long enough to provide 'the greatest likelihood of successful reintegration,' Congress intended [in the Second Chance Act] that each inmate would be considered for a placement of the longest duration - 12 months - although the ultimate placement may be less than 12 months, if warranted by application of the § 3621(b) factors, i.e., the nature and circumstances of the offense, the inmate's history and pertinent characteristics, and any statement by the sentencing court." Strong v. Schultz, 599 F. Supp. 2d 556, 562 (D.N.J. 2009) (cited with approval in Cerverizzo v. Yost, 2010 WL 1936265 at *2 (3d Cir. May 14, 2010)). Here, the record demonstrates that Petitioner's six-month CCC placement was determined not on the basis of the limitations contained in the BOP memoranda, but as a result of application of the § 3621(b) factors.[3] Moreover, through application of the § 3621(b) factors, the BOP determined

---

[3] Although the BOP memoranda played no role in the determination of Petitioner's CCC placement dates, the Assistant United States Attorney representing Respondents inexplicably maintains that Strong v. Schultz was wrongly decided. This Court disagrees and expressly
(continued...)

18

that six months duration provided the greatest likelihood of successful reintegration.[4]  And this is all the Second Chance Act requires.  As the Third Circuit explained in reversing a district court's summary dismissal of a § 2241 petition challenging a CCC placement under the Second Chance Act, "if [Petitioner] were to prevail, he would be entitled only to 'an order requiring the BOP to consider - in good faith - whether or not [he] should be transferred to a CCC' on an individualized basis in light of the statutory factors." Moncrieffe v. Yost, 2010 WL 729392 (3d Cir. Mar. 4, 2010) (quoting Woodall v. Fed. Bureau of Prisons, 432 F. 3d 235, 251  (3d Cir. 2005)).

In light of the record filed in this matter, this Court finds that the decision to place Petitioner in a CCC for six months did not violate federal law and will dismiss the Petition with prejudice.  See Moore v. Zickefoose, 2010 WL 2667434 (D.N.J. June 29, 2010); Stokes v. Norwood, 2010 WL 1930581 (D.N.J. May 12, 2010).

## IV.  CONCLUSION

For the reasons set forth above, the Court dismisses the Petition.

s/Robert B. Kugler
**ROBERT B. KUGLER, U.S.D.J.**

DATE:   July 12         , 2010

---

[3](...continued) declines to adopt such position.  Accord Krueger v. Martinez, 665 F. Supp. 2d 477 (M.D. Pa. 2009).

[4] The BOP implicitly found that a placement of seven to 12 months would not increase the likelihood that Petitioner's reintegration would be successful.  It is not the province of this Court to second guess the BOP and predict that a 12-month placement would provide a greater likelihood of successful reintegration in Petitioner's case than a six-month placement.  See Woodall, 432 F. 3d 235, 251 (3d Cir. 2005) ("[T]hat the BOP may assign a prisoner to a CCC [for 12 months] does not mean that it must").